# In the United States District Court
# For the Eastern District of Wisconsin
# Milwaukee Division

| | | |
|---|---|---|
| WISCONSIN CARRY, INC. <br> And <br> NAZIR AL-MUJAAHID <br><br> Plaintiffs <br><br> v. <br><br> CITY OF MILWAUKEE, <br> JOSEPH MENDOLLA, <br> JOHN CHISHOLM, in his official <br> Capacity as District Attorney of <br> Milwaukee County, Wisconsin, <br> PATTI KLEIN, in her official <br> Capacity as Clerk of Courts for <br> The criminal division of the Circuit <br> Court of Milwaukee County, <br> Wisconsin, <br> And <br> MARK WALTON, <br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action File No. <br><br> 2:12-cv-352-LA |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CITY OF MILWAUKEE, JOSEPH MENDOLLA, AND MARK WALTON MOTION TO SET ASIDE DEFAULT AND MOTIONSTO DISMISS

**Introduction**

On April 13, 2012, Plaintiffs commenced this action against, *inter alia,* the City of Milwaukee (the "City") and two Milwaukee police officers, Joseph

1

Mendolla and Mark Walton (the "Officers"). The City and the Officers were served with summonses and complaints on April 20, 2012, April 27, 2012, and April 30, 2012, respectively. Docs. 9-12. As of September 17, 2012, neither the City nor the Officers had responded or appeared, so the Clerk entered defaults against them. On September 20, 2012, the Milwaukee City Attorney made a general appearance on behalf of the City and the Officers, but did not respond to the Complaint. On October 9, 2012, the City and the Officers filed a Motion to set aside the default and to dismiss the claims against them. Plaintiffs will address each of the reliefs asked for in turn, and will show why the City and the Officers are not entitled to such relief.

**Argument and Citations of Authority**

*1. Motion to Set Aside Default Against the City*

The City asks the Court to set aside the default against it, pursuant to Fed.R.Civ.Proc. 55(c). The City concedes that in order to set aside the default, it must show: 1) good cause for the default; 2) quick action to correct it; and 3) a meritorious defense to the complaint. Doc. 18, p. 6; *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 630 (7th Cir. 2009); *Sun v. Board of Trustees of University of Illinois,* 473 F.3d 799, 810 (7th Cir. 2007); *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir. 1994); *U.S. v. DiMucci,* 879 F.2d 1488, 1495 (7th Cir. 1989); *Breuer Electric Manufacturing Co. v. Toronado Systems of America, Inc.,*

687 F.2d 182, 185 (7th Cir. 1982). As to point 1, however, the City relies heavily on a seemingly contradictory opinion from the Seventh circuit that says, "Rule 55(c) requires good cause for the judicial action, not good cause for the defendant's error." *Sims v. EGA Products, Inc.,* 475 F.3d 865, 868 (7th Cir. 2007).

The *Sims* Court did not explain its conclusion that seems to conflict with a long line of 7th Circuit precedents (cited above), holding "The defaulting party must show good cause for its default or the default order will not be vacated." *Pretzel & Stouffer,* 28 F.3d at 45. It appears the *Sims* court thought a default judgment of $31M would be a harsh penalty for failure to answer a complaint. The Seventh Circuit has not invoked the rule from *Sims* a single time since then, but it has required "good cause for default" both before and after.

Given the long line of cases holding that "good cause for default" is the requirement, not "good cause for judicial action," it is clear the former is the correct test. Moreover, excusing utter failure to respond in a timely manner to a summons makes no sense. There is no point in having a deadline in which to respond, and a mechanism for a default and default judgment, if a defendant is free to ignore a summons, force a plaintiff to obtain a default, and only then deign to respond.

The City made no attempt to show good cause for its default. It claims that service of process was defective, which will be discussed in more detail below.

3

The City did not claim that it did not actually receive the summons and complaint. Rather, the City's sole issue with service is that it was done by someone whom the City claims is a party to the action. The City's failure to respond in a timely manner is not excused by an alleged defect in service when the City actually received service.

Assuming *arguendo* that service was technically defective in the way the City describes, this defect still does not explain good cause for the City's failure to respond to the summons and complaint for six months. At best, it only provides the City with grounds for a motion to dismiss pursuant to Fed.R.Civ.Proc. 12(b)(5) (insufficient service of process).

Curiously, however, the City provides the Court with no explanation for why, even though it received service, it did not respond to the summons. "A party is not free to ignore a suit, to appear only after he has been defaulted, and to say that the appearance must be treated as timely." *O'Brien v. R.J. O'Brien & Associates,* 998 F.2d 1394, 1404 (7th Cir. 1993). A defendant's deliberate choice to rely on ineffective service demonstrates willfulness of default, and is a tactical decision that is neither mistake or excusable neglect. *Id.*

The City next contends that it acted quickly to correct the default. As grounds for this assertion, the City points to the "reasonably short period of time" it took to file its Motion ***after default was entered.*** Doc. 18, p. 7. The City does

4

not explain the "unreasonably long period of time" it took to respond to the summons in the first place. A look at other events in this case show the City has consistently ignored this litigation for no apparent reason:

| | |
|---|---|
| April 16, 2012 | City served with certificate of interested persons |
| April 20, 2012 | City served with summons and complaint |
| April 27, 2012 | Mendolla served with summons and complaint |
| April 30, 2012 | Walton served with summons and complaint |
| April 30, 2012 | City served with Plaintiff's consent to magis. Jurisdiction |
| September 14, 2012 | City served with return of service for City |
| September 14, 2012 | City served with return of service for Walton |
| September 14, 2012 | City served with return of service for Mendolla |
| September 14, 2012 | City served with amended return of service for City |
| September 14, 2012 | City served with motion for default |
| September 17, 2012 | Default entered |
| September 20, 2012 | City files general appearance |
| September 24, 2012 | City claims it received notice of entry of default |

Thus, prior to making its appearance, the City received 10 separate documents that should have put the City on notice that this litigation was pending and that the City ought to take action or at least investigate the case. The City even made an appearance four days before it claims it received notice of the entry of default, yet

5

Case 2:12-cv-00352-LA    Filed 10/12/12    Page 5 of 17    Document 22

the City uses the notice of entry of default as its triggering date for taking action. One has to ask, why did the City bother to enter an appearance if it had no intention of defending itself in this case?

The City and the Officers (who now are represented by City attorneys) were virtually flooded with correspondence and documents concerning this case, yet they took no action to do ***anything*** to defend themselves until 23 days after a default was entered against them, and nearly six months after they received multiple notices that this case was pending against them. This is hardly "quick action" to correct their default.

Finally, the City asserts it has meritorious defenses. The city asserts that it is not a proper party because the City claims it is acting under the direction of Defendant Chisholm. In other words, the City asserts that it cannot be liable for a federal constitutional right violation if it is in compliance with orders of a state official (the Milwaukee County District Attorney). This is not the law. *Estate of Boncher v. Brown County,* 272 F.3d 484, 487 (7th Cir. 2001) (Compliance with state law cannot be a defense against a § 1983 claim, "since state law might not comply with constitutional standards.") The City does not deny that it is in possession of Plaintiff Al-Mujaahid's property, nor does the City deny that it has refused to provide Al-Mujaahid with ***any*** process by which he may recover his property. The City merely asserts that it is only following orders.

6

Moreover, the City overlooks that the Complaint contains other claims against the City beyond recovery of Al-Muhaahid's property. The City does not address the propriety of those claims at all.

The City's next putative meritorious defense is that "it is not alleged to have committed any unlawful acts, and is not liable under § 1983 under a theory of *respondeat superior*." Doc. 18, p. 8. As to the latter point, Plaintiffs have not claimed a theory of *respondeat superior* against the City, so this argument is a straw man. As to the former point, it is just plain wrong. Paragraph 23 of the Complaint says, "Defendants have a custom, policy, or practice of requiring lawful firearms owners, but not other property owners, to engage in formal litigation to recover their seized property." Paragraph 13 alleges that the City has Plaintiff Al-Mujaahid's property. Paragraph 15 alleges that the Al-Mujaahid has asked the City for his property, and Paragraph 25 alleges that the City has refused to return it to him and has deprived him of due process. It is incredible that the City would assert that the City is not alleged to have committed any unlawful acts.

The City's third asserted meritorious defense is that "plaintiffs have not sufficiently pled alleged facts to support City liability under *Monell v. Department of Social Services,* 436 U.S. 658 (1978)." Once again, the City ignores the plain wording of the Complaint. *Monell* held that a local government such as the City "can … be sued under § 1983 … where … the action that is alleged to be

7

unconstitutional implements or executes … official policy." 436 U.S. at 659. In the instant case, the Complaint, as noted earlier, describes the City's "custom, policy, or practice" of which Plaintiffs complain.

Finally, the City asserts in a most conclusory fashion that "plaintiff has failed to state a claim for which relief may be granted." The City's assertion utterly lacks any basis for which Plaintiffs can respond. The Complaint describes a set of facts, shows that the City has Al-Mujaahid's property, will not return it, will not provide him any process for recovering it, and generally requires firearms owners but not others to go through process hell in order to recover their property. The Complaint makes out a valid 14th Amendment claim against the City.

### 2. *The City Moves to Dismiss for Insufficient Service of Process*

The City claims the service against it was insufficient because service was accomplished by Nik Clark, the chairman of Plaintiff Wisconsin Carry, Inc. The City asks this Court to adopt a rule that service cannot be accomplished by someone who is affiliated with a plaintiff in any way. The City can find no cases to support its position. Instead, the City relies on *Central Laborer's Pension v. Griffee,* 198 F.3d 642 (7th Cir. 1999). In *Griffee,* a beneficiary to a pension plan served the defendant on behalf of the pension plan. The Court called the service "curious" but did not rule on the matter because service was accomplished after the

8

case had already been dismissed on other grounds. The Court did note that it could find no case law on the subject of "real parties in interest" serving process.

Perhaps more importantly, however, the *Griffee* court said that ***receipt*** of service is the key. "Griffee does not deny that he was served. If receipt of service is conceded, we suppose it would not matter if the server were a two-month old orangutan." 198 F.3d at 645. In the instant case, the City does not claim that it was not served. It merely engages in scrambling for any reason it can find to undo the damage of its serious neglect of this case. With service conceded, and with the presumed fact that Mr. Clark is somewhat more sentient than a two-month old orangutan, the City is grasping at straws rather than raising real issues.

The City points to *Griffee* as its sole authority for encouraging this Court to find service improper in the instant case. That is, the City relies on "non-authority." As if to undercut its own argument, the City notes that in *United States v. Gregor,* 1989 U.S. Dist. LEXIS 686, the court ruled that service by an IRA employee was valid on behalf of the United States. The City urges this Court to find a sufficient coincidence of interest between Wisconsin Carry's chairman and Wisconsin Carry that does not exist between an IRS employee and that IRS.

The City urges no standard at all. If the City's position is adopted, courts would be free to accept or not accept process servers based on an arbitrary

9

designation of how much the interests of the process server correspond with the interests of the plaintiff.

Instead, the proper rule is the one already found in the Rules. "***Any*** person who is at least 18 years old and not a party may serve a summons and complaint." Fed.R.Civ.Proc. 4(c)(2) [emphasis supplied]. Nik Clark is not a party, period. He is not subject to the jurisdiction of the Court as a party and is not a "party" for any other purpose. It would be anomalous to call him a "party" for the purposes of designating who can serve process, but for no other purpose.

Moreover, the City's proposed rule would make service of process nearly impossible in high profile cases. Consider the *Bush v. Gore* cases, in which the Supreme Court ultimately ruled on the validity of the 2000 presidential election. Who in the United States has no interest in the outcome of the presidential election and would therefore be eligible to serve process in such a case?

The bottom line is that there is no "interest in the case" test in the rules. The City does not deny that it received the summons and complaint served by Nik Clark. It only complains that Mr. Clark should not be permitted to serve it.

The City also overlooks that its own case, *Griffee,* holds that a Court has jurisdiction over a defendant who "makes an appearance in the case without reserving an objection to jurisdiction." 198 F.3d at 644. In the instant case, the

City made a general appearance on September 20, but did not object to the service of process of October 9.

### 3. The City Moves to Dismiss For Failure to Effect Service

The City next makes a bold argument indeed. After sitting on its hands for six months, apparently hoping that this case would just go away, the City just now appears and says the case against it should be dismissed because Plaintiffs did not serve it within 120 days. The City fails to recall that if it had not defaulted, it would have made a timely objection to service of process and Plaintiffs could have corrected the alleged "defect."

Moreover, the rule upon which the City relies states that "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed.R.Civ.Proc. 4(m). First of all, it is not at all clear that there has been a "failure" of service. It is not disputed that the City *was* served. The only issue is with the eligibility of the process server. Given that there is no case law on point that would have informed Plaintiffs that Mr. Clark was not an eligible server, it can hardly be claimed that Plaintiffs were remiss in selecting Mr. Clark for this task. Moreover, now that the City has made the ***untimely*** objection to Mr. Clark's service, Plaintiffs have promptly re-served the City, with a different process server, out of an abundance of caution. Doc. 21.

11

### 4. *Mendolla Moves to Set Aside His Default*

Defendant Mendolla also moves to set aside the default against him. He, however, gives short shrift to the three-part test for obtaining such relief (i.e., good cause for the default, quick action to correct the default, and meritorious defenses). He says nothing that amounts to "good cause for the default." If anything, he demonstrates "bad cause." He has filed an affidavit in which he admits he was served with the summons and complaint on April 27, 2012. Doc. 18-2, ¶ 7. He told some of his fellow officers about the documents, but did not tell his supervisor (or apparently anyone else). *Id.,* ¶ 8. He said, "I put the documents aside, as I was not familiar with them." *Id.,* ¶ 9.

If just plain ignoring a summons and complaint because of lack of familiarity with them were "good cause for a default," then no one anywhere would *ever* have an obligation to respond to a summons. Instead, the practice would be to wait until the plaintiff obtained a default and only then to respond to the summons. The rule requiring a response within 21 days would be a mere suggestion, and a weak one at that.

Mendolla was served by a sheriff's deputy. Doc. 11. Surely a reasonable person would take heed when a uniformed law enforcement officer serves papers on the person that has the person's name on them and that say, "A lawsuit has been filed against you…. If you fail to respond, judgment by default will be entered

12

against you….” This is especially so in the case of Mendolla, a law enforcement officer himself. It is just plain ludicrous for Mendolla to come forward and say he has good cause for his default.

Mendolla likewise has not acted swiftly to correct the default. He was served with all the same papers the City was served with, and he took the same slow amount of time to respond. He was served in April, did not appear until September, and did not respond until October. That is not "swift."

Finally, Mendolla has not set forth a meritorious defense. He merely says there are "real questions" as to why he was named as a defendant. The Complaint alleges that Mendolla seized Al-Mujaahid's property and knew or should have known he was setting in motion a series of events that would result in Al-Mujaahid's inability to recover his property. Mendolla admits in his affidavit that he secured a firearm that he believes to be Al-Mujaahid's firearm. Doc. 18-2, ¶¶4-5. He does not deny the remaining allegations in the Complaint. This can hardly be a "meritorious defense." He further claims that he has qualified immunity, but he does not elaborate. A generalized claim of immunity, with nothing further, cannot constitute a meritorious defense.

### 5.  *Mendolla Moves to Dismiss*

In what must be the shortest argument in support of a motion to dismiss ever filed, Mendolla says in one sentence that he has qualified immunity and Plaintiffs

13

Case 2:12-cv-00352-LA   Filed 10/12/12   Page 13 of 17   Document 22

have failed to state a claim for which relief may be granted. He gives no discussion, cites no cases, and points to nothing in the Complaint. It is the barest absurdity of motions and cannot be considered seriously by this Court.

When considering a motion to dismiss for failure to state a claim, the Court must accept as true the allegations in the complaint and determine if the complaint states a claim "that is plausible on its face." *Plan v. Medical College of Wisconsin, Inc.,* 657 F.3d 496, 502 (7th Cir. 2011). "The plaintiff need not, however, plead detailed factual allegations." *Id.* The Court must therefore accept as true that Mendolla seized Plaintiff's firearm knowing that Plaintiff would be unable to get it back and providing Plaintiff no process by which to get it back. The Complaint states a valid due process claim against Mendolla.

### *6. Walton Moves to Set Aside the Default Against Him*

Defendant Walton also moves to set aside the default entered against him. In a variation on Mendolla's case, Walton filed an affidavit saying he "does not recall" being served. He does not deny being served. He just denies any memory of it. Fortunately, Walton's memory is not the test for validity of service. A Milwaukee County sheriff's deputy served Walton, and signed a contemporaneous affidavit attesting to the fact that he did so. Doc. 10. Walton does recall receiving "documents in the mail regarding this case." Doc. 18-1, ¶ 14. He further recalls

reviewing such documents, then putting them aside and disregarding them. *Id.,* ¶ 15.

Of course, one would expect that Walton would have received various documents about this case, as Plaintiffs served him with various documents as noted earlier in this brief. Walton's disregard of what obviously were legal documents was foolhardy. He makes no attempt to explain to this Court what his "good cause for default" was. He just hopes the Court will overlook his blatant lack of respect for the judicial process of which he is a part. One cannot help but wonder what his reaction would be to a criminal defendant who received a summons in the mail and "put it aside and disregarded it."

Not until after he was served with Plaintiffs' motion for a default judgment did Walton wake up and contact the "Civil Litigation Unit." He can hardly claim to have acted swiftly. He did nothing for six months.

Likewise, Walton does nothing more than Mendolla to set up a meritorious defense. He recites the same, empty conclusory statements about immunity and "serious questions." Plaintiffs incorporate their arguments against Mendolla here against Walton.

### 7. *Walton Moves to Dismiss*

Walton's motion to dismiss is combined with Mendolla's. Plaintiffs therefore incorporate their arguments against Mendolla's motion against Walton's.

### 8. The City and the Officers Suggest No Sanction

The City and the Officers are calling a "Mulligan," with no penalties. They do not like the sanction of a default, but they suggest nothing else. Even the case upon which they principally rely, *Sims,* acknowledges that sanctions are appropriate for failing to respond to a summons and complaint. *Sims* just seems to think that $31M is too great a sanction. Perhaps it is. But, Plaintiffs are not seeking $31M. They are not seeking damages at all. They should not, however, have to bear the burden of responding to the City's and the Officers' hail Mary hope of setting aside the default. If the Court sees fit to set the default aside, the City and the Officers should receive *some* sanction. Plaintiffs suggest that the reasonable attorney's fees they incurred in responding to the instant Motion would be appropriate.

      /s/ John R. Monroe
John R. Monroe
Attorney for Plaintiffs
9640 Coleman Road
Roswell, GA  30075
678 362 7650
John.monroe1@earthlink.net

## CERTIFICATE OF SERVICE

I certify that on October 12, 2012, I filed this document with the ECF system, which automatically will serve a copy via email upon:

Christopher J. Blythe
blythecj@doj.state.wi.us

Roy L. Williams
Rwilliams4@milwcnty.com


Robin Pederson

rpederson@milwaukee.gov

                                                              /s/ John R. Monroe
                                                                John R. Monroe

17

Case 2:12-cv-00352-LA   Filed 10/12/12   Page 17 of 17   Document 22