UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WISCONSIN CARRY, INC.
And
NAZIR AL-MUJAAHID

    Plaintiffs,

    v.                   Case No. 12-CV-352

CITY OF MILWAUKEE,
JOSEPH MENDOLLA,
JOHN CHISOLM, in his official
capacity as District Attorney of
Milwaukee County Wisconsin,
PATTI KLEIN, in her official
capacity as Clerk of Courts for the
criminal division of the Circuit
Court of Milwaukee County,
And
MARK WALTON,

    Defendants.

REPLY OF DEFENDANTS CITY OF MILWAUKEE, JOSEPH MENDOLLA, AND MARK WALTON TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SET ASIDE DEFAULT AND MOTION TO DISMISS

## I. INTRODUCTION

On April 13, 2012, Plaintiffs filed the above captioned matter. Service of a Summons and Complaint was effected upon Joseph Mendolla on April 27, 2012, upon Mark Walton on April 30, 2012, and purportedly upon the City of Milwaukee on April 20, 2012.

Defendants City of Milwaukee (the City), Officer Mendolla, and Detective Walton did not answer the Complaint. Plaintiffs subsequently requested Entry of Default on September 14, 2012. Default was entered by the clerk of court on September 17, 2012.

Defendants City of Milwaukee, Joseph Mendolla, and Mark Walton submitted their motion, brief, and supporting documentation for vacating the entry of default, and dismissing the action against the City on October 9, 2012. Plaintiffs filed a responsive memorandum in opposition to the motion on October 12, 2012.

Defendants City of Milwaukee, Joseph Mendolla, and Mark Walton now submit their reply.

## II. ARGUMENT

A. There is No Personal Jurisdiction Over the City

Plaintiffs focus much of their argument upon the issue of whether there is good cause for the City's default; however, that issue is likely moot since the threshold question for this Court in deciding this motion, in relation to the City, is whether service was proper. This is because if this Court determines that the City was not properly served, then this Court would not have personal jurisdiction over the City, and the entry of default would be void irrespective of the "good cause for default" issue. (Defs.' Brief, ECF No. 18, pp. 4-5 (citing *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991); *Select Creations v. Paliafito Am.*, 830 F. Supp. 1223, 1237 (E.D. Wis. 1993); *Orix Fin. Servs. v. Thunder Ridge Energy, Inc.*, 579 F. Supp. 2d 498, 502 (S.D.N.Y. 2008)); *see also e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 598 (7th Cir. 2007).)

The only remaining question after such a determination for this Court would be whether it should grant retroactive authority to Plaintiffs to serve process, after a showing of good cause for failure to serve within 120 days of filing the Complaint.[1] (ECF No. 18, pp. 5-6 (citing Fed. R. Civ. P. 4(m), *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008)).) This determination can, and should, also be made regardless of the "good cause for default" issue.

---

[1] On 10/10/12, the City of Milwaukee was served process in this matter by Matthew J. Martin. (ECF No. 21.; *see* ECF No. 22 at 11)

B. The City was Improperly Served

In describing the City's argument that it was improperly served, Plaintiffs state that the "City asks this Court to adopt a rule that service cannot be accomplished by someone who is affiliated with a plaintiff in any way." (Pls.' Mem. of Law, ECF No. 22, p. 8.) This is a gross mischaracterization; however, Plaintiffs do not stop there. Plaintiffs go on to counter the City's argument by use of an analogy, claiming that were this Court to hold that the City was improperly served in the instant case, then by the same standard no United States citizen would have been able to serve process in *Bush v. Gore* under the Rules of Civil Procedure, due to every citizen's interest in who is the president. This is disingenuous. If we were to suppose that in *Bush v. Gore* service had been made by then-vice-presidential candidate Dick Cheney, then perhaps we would be closer to an appropriate analogy.

The City concedes that there is apparently no direct controlling law that is squarely on-point, but it is a far cry to suggest that the ruling the City requests "urges no standard at all." (ECF No. 22, p. 9.) On the contrary, the City urges this Court to apply Rule 4(c)(2). Assuredly, the City's motion requires a judgment call to be made by this Court; however, firstly, this Court is not without some guidance, i.e., the rules themselves and the distinguishing case law provided, but secondly, judgment calls are inherent in the function of all courts.

If the chairman of a plaintiff corporation can serve a summons and complaint and not run afoul of the rule, then the rule would not meet its purpose of requiring service by neutral persons. This should be easily distinguishable from a mere low level employee of a plaintiff corporation, or a citizen of the United States, not otherwise personally or professionally associated with the parties, as was the case in *Bush v. Gore*.

3

Case 2:12-cv-00352-LA   Filed 10/29/12   Page 3 of 11   Document 24

C. Receipt of Service by the City is Not Conceded

Plaintiffs state that the Seventh Circuit's holding in *Central Laborers' Pension, Welfare & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999) was that "receipt of the service is the key" (ECF No. 22, p. 9), which obviated the question of whether the server was a real party in interest. On the contrary, the City asserts that the court's holding was that the case was defunct at the time of service, and therefore did not "confer jurisdiction." *Id*. at 645. While the court did note the existence of the "real party in interest" issue, it stated that it need not rule on it because the case was defunct, and because the defendant had not denied he was served, thus conceding he was served. *Id*. Here, the City has denied it was served, it has not conceded service, and therefore the issue of whether it was properly served survives.

D. Actual Notice Does Not Control

Plaintiffs claim that actual notice trumps any defect in service (ECF. No. 22, p. 4); however, "[t]he Seventh Circuit has held that courts lack jurisdiction over defendants who have been improperly served, and that actual notice does not defeat this rule. *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991)." (ECF No. 18, p. 4.) Therefore, Plaintiffs' repeated references to actual notice in conjunction with their arguments regarding the issue of the propriety of service conflates the issues. If this Court finds the City was improperly served, actual notice is of no consequence.

E. The City Has Not Waived Its Objection to Personal Jurisdiction

Plaintiffs state that the City waived objections to jurisdiction when counsel filed a notice of appearance on September 20, 2012. (ECF No. 22 at 10-11.) However, Fed. R. Civ. P. 12(h) provides that a defense based upon lack of personal jurisdiction is waived if it is not brought by motion, or omitted from an earlier motion, or not included in a responsive pleading or amended

4

pleading. The City raised the issue in its first motion, and the notice (ECF No. 16) was not filed as a responsive pleading. *See* Fed R. Civ. P. 7(a). Therefore, the defense of lack of personal jurisdiction was not waived.

F. The City Has Good Cause for Its Default

This discussion only has application if this Court does not find that the City was improperly served, because, in that event, the entry of default is void as a matter of law. If this Court finds that the City was properly served, the City failed to answer, and entry of default was therefore proper, then this Court must consider the City's motion in the alternative: that it should vacate such entry for good cause.

Plaintiffs assert that the City has relied upon an improper definition of "good cause" (ECF No. 22, pp. 2-3) in the much cited test related to vacating an entry of default—1) good cause for default, 2) quick action to correct it, and 3) a meritorious defense to the plaintiff's complaint (*see* ECF. No. 22, p. 2 (citing *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 630 (7th Cir. 2009); *Sun v. Board of Trustees of University of Illinois,* 473 F.3d 799, 810 (7th Cir. 2007); *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir. 1994); *U.S. v. DiMucci,* 879 F.2d 1488, 1495 (7th Cir. 1989); *Breuer Electric Manufacturing Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182, 185 (7th Cir. 1982)).) Assuming *arguendo* that Plaintiffs are correct in their argument as to the proper meaning of "good cause" (ECF No. 22, p. 3)—that the issue is actually whether the movant has good cause for its action (or inaction) that resulted in the entry of default as opposed to whether the court has good cause for its judicial action to set aside the entry of default—the City can still show good cause for its default: it had a legitimate question as to whether it was properly served the Summons and Complaint, and if improperly served, it had no legal obligation to answer.

5

Plaintiffs quote *O'Brien v. R.J. O'Brien & Associates,* 998 F.2d 1394, 1404 (7th Cir. 1993), "'A party is not free to ignore a suit, to appear only after he has been defaulted, and to say that the appearance must be treated as timely'" (ECF No. 22, p. 4), in support of their proposition that the City does not have good cause. The Plaintiffs go on to state, in attribution to *O'Brien*, that a "defendant's deliberate choice to rely on ineffective service demonstrates willfulness of default, and is a tactical decision that is neither mistake or excusable neglect." (ECF. No. 22, p. 4.)

Plaintiffs' mention of "mistake or excusable neglect" appears to be in reference to an explanatory parenthetical in *O'Brien* for the holding in *Kumar v. Ford*, 111 F.R.D. 34 (S.D.N.Y. 1986), *O'Brien* 998 F.2d at 1404, related to a motion under Fed. R. Civ. P. 60(b), which further relates to motions to vacate default judgments, not motions to vacate entries of default, which are controlled by Fed. R. Civ. P. 55(c), and is the basis of the City's motion here. There is overlap between the rules and standards, but "the [three-part] test is more liberally applied in the Rule 55(c) context." *Cracco*, 559 F.3d at 631.

More significantly, the factual circumstances that led to the court's holding in *O'Brien* are clearly distinguishable from the facts here. In *O'Brien*, the defendant checked with the court's clerk and found that the plaintiff had not filed proof of service as required by then-Rule 4(g) (now Rule 4(l)), and based upon that the defendant concluded that he had not been properly served and believed that he did not have to answer. *Id.* at 1402. The court held that the defendant's belief was unreasonable because the rule specifically provided that "'failure to make proof of service does not affect the validity of service,'" and the defendant was therefore unable to show good cause. *Id.* (quoting Fed. R. Civ. P. 4(l)).

It stands to reason then that if a defendant defaults based upon a belief regarding the propriety of service that is reasonable, but ultimately incorrect, then that belief could constitute

6

good cause for the default. Here, the rules specifically provide that a party may not effect service, and the case law provides that service by a party renders the service void and denies personal jurisdiction to the court. The rules and case law, contrary to the defendant in *O'Brien*, are in favor of the City and raise a legitimate question as to whether the City was properly served. Despite this, if this Court, in the end, finds that service by Mr. Clark was proper, that does not necessarily retroactively render as unreasonable the City's belief that service was improper. If this Court finds the City's question regarding the validity of Mr. Clark's service to have been reasonable, despite ruling against it, this Court should find the City's belief, and acts in accordance with it, to have been reasonable and to constitute good cause.

G. The City Took Quick Action

Plaintiffs assert that the City has taken an "unreasonably long period of time to respond to the summons." (ECF No. 22, p. 5.) Plaintiffs then go on to claim that the City was "virtually flooded" (ECF No. 22, p. 6) with documents in relation to this lawsuit, apparently arguing actual notice again or constructive notice, and they then conclude that the City's motion cannot be considered "quick action" because its responsive motion came nearly six months after the lawsuit was filed. However, the City submits that the defendants should be judged on the "quickness' of its action in relation to the timing of its receipt of notice of the entry of default. How is a defendant to take action, quick or otherwise, to correct a default until that defendant has notice that the default is entered?

In another set of circumstances, one might argue that a defendant should have taken quick action when it knew, or should have known, that a plaintiff could file for entry of default and obtain it. However, where a defendant does not believe it was properly served, it would not make sense for that defendant to take corrective action in advance of the entry of default since, if the

7

defendant was right, such entry would be void anyhow. The City might have elected to bring a motion under Fed. R. Civ. P. 12(b)(5), but it is was not obligated to do so. The question presented to this Court, if it should determine that the City was properly served, is whether the City should be deemed to have taken quick action under the specific factual circumstances unique to this case.

The City filed its motion to vacate the default 15 days after it received official notice of the motion (23 days after entry of default, as noted by Plaintiffs (ECF No. 22, p. 6)), and 15 days before the then-next scheduled telephonic scheduling conference. The City submits that this Court should find that the City did take quick action to correct the default.

H.  The City has Meritorious Defenses

Plaintiffs spend some time addressing the defenses raised by the City as meritorious in satisfaction of the third part of the test. (ECF No. 22, pp. 6-8.) Do the Plaintiffs intend to suggest that the City has no meritorious defenses? "A meritorious defense need not, beyond a doubt, succeed in defeating a default judgment, but it must at least 'raise[] a serious question regarding the propriety of a default judgment and . . . [be] supported by a developed legal and factual basis.'" *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012) (quoting *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994)). In addition to the filings of the City, Answers by the other Defendants have been filed in this case, which raise similar issues and meritorious defenses denying the existence of any policy or practice of violating the due process rights of firearm owners in the return of their firearms where they are entitled to such return. The legal and factual dispute is therefore already before this Court. Surely, the existence of questions of law and of fact in this matter have been adequately established according to the standard articulated in *Wehrs*.

From the perspective of the City, its involvement related to the firearm of Mr. Al-Mujaahid is that its police officers seized it as evidence from a crime scene where a person was shot with it, which can hardly be argued as unreasonable, or more significantly, illegal. The fact that Mr. Al-Mujaahid was ultimately cleared of any wrongdoing at a later time does not make that seizure, at the time it was made, suspect in any way. The firearm was then stored as evidence, like all other evidence, and it is being held, like all other evidence, until there is a legal basis to remove it. The City simply lacks the legal authority to return Mr. AL-Mujaahid's firearm. Certainly, these facts establish a meritorious defense.

Furthermore, Plaintiffs' *Monell* claim is based on the barest of allegations—that a policy or practice exists, with no substantive description or further allegations in support thereof, and that other members of Wisconsin Carry, Inc. have suffered due to the policy or practice, with no further information on who those members are or what their experiences have been. The City denies that any such policy or practice exists. (*See* Perez Aff., Ex. A 2-3.) The existence of the policy or practice is a question of fact. There is much to litigate here, and the existence of meritorious defenses cannot reasonably be doubted.

I. The Entry of Default Against the Defendant Officers Should be Set Aside.

The Affidavits of Officer Mendolla and Detective Walton both describe each of their minor, peripheral roles in this matter, and how they each claim to not have actually seized the firearm, and in the case of Detective Walton, to never have even laid eyes or hands upon it. While police personnel may be familiar with criminal legal procedure, it is perhaps understandable how persons in their positions would measure their known involvement (or non-involvement) in the matter against the threat of litigation, and erroneously conclude that their perceived lack of liability would protect them from any and all consequences.

Ultimately, the basis of good cause for the default here is that they are defendants with only tangential connection to the true matter in controversy, they have no authority to return the firearm, a default judgment against them will get Plaintiffs no closer to the true substance of their lawsuit, and there has been raised a legitimate evidentiary question of their role and why they were named as defendants and included in this lawsuit in the first place. They both took quick action after receiving notice of the entry of default, and they both filed an affidavit regarding their role in relation to the firearm in this lawsuit that conflicts with the allegation of their role in the Complaint, i.e., that they seized the firearm in question. This conflict creates a question fact, and a meritorious defense; specifically, and simply, that they did not do what the Plaintiffs allege that they did.

Defendants Officer Mendolla and Detective Walton request this Court to set aside the entry default on the law set forth in their motion, and in the interest of justice.

J.  Defendants Officer Mendolla and Detective Walton Did Not Move to Dismiss

Plaintiffs contend that Defendants Officer Mendolla and Detective Walton moved to dismiss the Complaint against them, and present argument in opposition. (ECF. No. 22, pp. 13-15.) It was not the intent of the defendants to raise such a motion at this time. To any extent there is confusion on this point, let the defendants be clear: the only motion made by Officer Mendolla and Detective Walton at this time is to vacate the entry of default.

III. Conclusion

Based upon the foregoing reasoning and arguments, Defendants respectfully request that this Court grant their motions to vacate the entry of default against them, and to dismiss the Complaint against the City of Milwaukee, unless this Court grants leave to serve beyond 120 days of filing of the Complaint.

Dated and signed at Milwaukee, Wisconsin 29 day of October, 2012.

            GRANT F. LANGLEY
            City Attorney


            s/ Robin Pederson
            Assistant City Attorney
            State Bar No. 01045759
            Attorneys for Defendants City of Milwaukee,
            Joseph Mendolla, and Mark Walton
            Milwaukee City Attorney's Office
            800 City Hall
            200 East Wells Street
            Milwaukee, WI  53202
            Telephone: (414) 286-2601
            Fax: (414) 286-8550
            Email: rpederson@milwaukee.gov

1032-2012-1087:186092